IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division


KIM J. BENNETT, et al.,

        Plaintiffs,

        v.        Civil Action No. 3:10CV39-JAG

DILLARD'S, INC.,

        Defendant.


**MEMORANDUM OPINION**

This case presents the issue of whether an agreement to arbitrate claims of age discrimination must comply with the Older Workers Benefit Protection Act ("OWBPA"), 29 U.S.C. § 626(f)(1). Adhering to the decisions of the United States Supreme Court and the Courts of Appeals that have addressed this issue, the Court finds that the arbitration agreement does not violate the OWBPA and orders that the parties proceed to arbitration.

The plaintiffs in this case formerly worked for Dillard's, Inc. ("Dillard's"), a chain of department stores. In late 2008 and early 2009, Dillard's fired them, allegedly because of their age. The plaintiffs filed suit in state court, claiming a violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq*. Pursuant to 28 U.S.C. § 1441, Dillard's removed the case to federal court, invoking the Court's federal question and diversity jurisdiction. 28 U.S.C. §§ 1331, 1332. The parties do not question the Court's jurisdiction.

This matter is before the Court on the defendant's motion to dismiss or in the alternative to compel arbitration. At this stage of the case, the Court will review the claims and factual

allegations in the complaint in the light most favorable to the plaintiffs. *Martin Marietta v. Intern. Tel. Satellite*, 991 F.2d 94, 97 (4th Cir. 1992). Further, the Court will assume that all reasonable inferences from the plaintiffs' allegations are true. *Cheche v. Wittstat Title & Escrow Co., LLC*, 723 F. Supp. 2d 851, 854 (E.D. Va. 2010).

## I. Facts

During their employment at Dillard's, each of the plaintiffs signed a pre-dispute arbitration agreement. (*See* Def's Mot. to Dismiss, Ex. A, Tabs 1-4, Rules of Arbitration.) The agreements are substantially identical and cover disputes between Dillard's and its employees. The agreement requires the employees to pursue any and all claims against Dillard's, including claims that arise in the future, exclusively through the avenue of arbitration. Moreover, it specifically encompasses claims of age discrimination. In listing the claims covered, the agreement includes the following:

> Discrimination or harassment on the basis of race, sex, religion, national origin, age, disability or other unlawful basis (for example, in some jurisdictions, protected categories include political affiliation, familial status or sexual orientation).

(Rules of Arbitration 1.) To make its scope clearer, the agreement says that arbitration must occur in "any claim that could be made in a court of law." (*Id.*) The list of covered claims appears in a section titled "WHAT IS COVERED." (*Id.* 1-2.)

The agreement also contains the following language immediately above the signature block: "WE AGREE TO ARBITRATE OUR DISPUTES AND TO ABIDE BY THE RULES OF ARBITRATION." (*Id.* 12.) Additionally, the agreements contain the following provision, underscored in bold type:

> **IMPORTANT NOTICE: THIS AGREEMENT WAIVES YOUR RIGHT TO A JURY TRIAL AND TO PURSUE LITIGATION IN COURT. READ IT CAREFULLY BEFORE SIGNING.**

(*Id.*)  The agreement expressly identifies the rules of arbitration that will govern proceedings under the agreement.

Although the plaintiffs signed the agreements at different times, the arbitration contracts all had the same terms.  When presented with the agreement for signature, each plaintiff faced a difficult choice: either sign the document or lose his or her job at Dillard's.  All four plaintiffs signed the agreement well before their firings.

## II. Discussion

### A.  Agreements to Arbitrate Are Not Barred by the OWBPA

Federal law favors the arbitration of disputes.  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.* 532 U.S. 105, 111-12 (2001).  The Federal Arbitration Act provides that any agreement to arbitrate "shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of such contract."  9 U.S.C. § 2 (2010).

In this case, the plaintiffs argue that the OWBPA precludes pre-dispute arbitration agreements covering ADEA claims.  In the OWBPA, Congress attempted to address issues that had arisen under the ADEA.  Specifically, the OWBPA was adopted to stop employers from coercing or misleading older employees into signing unfair separation agreements.  *Linton v. KB Home Ind., Inc.*, No: 1:07-CV-0048-DFH-TAB, 2007 U.S. Dist. LEXIS 48780, at *14 (S.D. Ind. July 5, 2007) (citing S. Rep. No. 101-236, at 5 (1990), *reprinted in* 1990 U.S.C.C.A.N. 1509, 1510).  It addresses situations in which the employer uses its economic power (or the threat of exercising economic power) to push older employees to accept a severance package.

The OWBPA accomplishes this purpose primarily by requiring agreements to be in plain English and by slowing the termination process down.  The statute says that an employee "may not waive any right or claim under [the ADEA] unless the waiver is knowing and voluntary." 29

3

U.S.C. § 626(f)(1). The OWBPA then sets minimum standards for a "knowing and voluntary" waiver of rights. For instance, the waiver must be written in plain English, must state the specific rights given up, must advise an employee to consult an attorney, must give an individual twenty-one days to consider the agreement, and must allow seven days to rescind it. The employee must receive consideration for the waiver and cannot waive claims that may arise in the future. 29 U.S.C. § 626(f)(1)(A) through (H).

The arbitration agreements in this case do not meet the standards of the OWBPA. For example, employees are not given twenty-one days to consider the waiver, are not given seven days to rescind, and are not expressly told to consult an attorney.[1] Thus, the plaintiffs argue that the arbitration agreements are invalid. In response, Dillard's contends that the OWBPA does not apply to the agreements.

Ultimately, the agreement merely changes the forum in which age discrimination claims are heard, not the substantive claims themselves. The courts that have examined this issue have almost uniformly held that the OWBPA's waiver requirements apply only to substantive rights. Further, they have held that an agreement to arbitrate does not waive a substantive right but rather waives a procedural mechanism—the judicial forum—to enforce the right.

In *Gilmer v. Interstate/Johnson Lane Corp.*, the United States Supreme Court held arbitration to be a permissible way to resolve disputes that arise under the ADEA. *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991). The Court said that the ability to have a trial in court is *not* a substantive right:

---

[1] The plaintiffs argue that the waivers miss the OWBPA mark in several other ways. Given that the Court has already found that the waivers do not comply with the OWBPA, analysis of those additional grounds is unnecessary.

> By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum.

*Id.* at 26 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.* 473 U.S. 614, 628 (1985)). The Court noted that Congress did not indicate explicitly in the statute or in the legislative history that arbitration is not permissible under the ADEA. *Id.* Giving "healthy regard" to the federal policy favoring arbitration, the Court held that arbitration was permissible. *Id.* at 26, 35.

*Gilmer* was decided just after the adoption of the OWBPA, but no claim was made under the new Act.[2] Nevertheless, the Court indicated that the OWBPA would not affect its analysis. The Court said:

> Congress, however, did not explicitly preclude arbitration or other nonjudicial resolutions of claims, even in its recent amendments [the OWBPA] to the ADEA.

*Id.* at 29. In short, the Court expressed the view that the OWBPA did not preclude pre-dispute agreements for arbitration of ADEA claims.

The Supreme Court reaffirmed its view in a recent case and addressed almost the precise argument raised by the plaintiffs here. In *14 Penn Plaza LLC v. Pyett*, the plaintiff's union had entered into a collective bargaining agreement that mandated arbitration for ADEA claims. *See 14 Penn Plaza LLC v. Pyett*, 129 S. Ct. 1456 (2009). The plaintiff, however, argued that he could not waive the right to a judicial trial unless the waiver complied with the OWBPA's requirements. The Court said, again, that agreeing to arbitration does not waive a substantive right, and the ability to have a jury trial was not a right protected by the OWBPA. *Id.* at 1464 n.5. Significantly, the Court indicated that it would reach the same result in a case, such as the instant one, involving an individual waiver:

---

[2] The agreement in *Gilmer* was made before the adoption of the OWBPA.

> [T]he agreement to arbitrate ADEA claims is not the waiver of a "substantive right" as that term is employed in the ADEA. . . . Indeed, if the "right" referred to in § 626(f)(1) included the prospective waiver of the right to bring an ADEA claim in court, even a waiver signed by an individual employee would be invalid as the statute also prevents individuals from "waiv[ing] rights or claims that may arise after the date the waiver is executed." § 626(f)(1)(C).

*Id.* at 1465. The Court noted that if arbitration agreements were governed by the OWBPA, they could not exist for ADEA cases because pre-dispute agreements to arbitrate necessarily entail waiving a right to a future claim, a result forbidden by the OWBPA. Finding this result inconsistent with Congressional intent, the Court upheld the arbitration agreement. *Id.*

The Courts of Appeals have followed *Gilmer*. In *Rosenberg v. Merrill Lynch, Pierce, Fanner & Smith*, the First Circuit decided the very issue raised in this case. *See Rosenberg v. Merrill Lynch, Pierce, Fanner & Smith*, 170 F.3d 1 (1st Cir. 1999). Analyzing the relevant case law, the court held that "Congress did not intend to preclude predispute arbitration agreements when it enacted the OWBPA." *Id.* at 13. In *Williams v. Cigna Financial Advisors, Inc.*, the Fifth Circuit stated that "the OWBPA protects against the waiver of a right or claim, not against the waiver of a judicial forum." *See Williams v. Cigna Financial Advisors, Inc.*, 56 F. 3d 656, 660 (5th Cir. 1995). Finally, in *Seus v. John Nuveen & Co., Inc.*, yet another court found that "the ADEA, as amended by the OWBPA, still reflects no congressional intent to except from the [Federal Arbitration Act] pre-dispute agreements to arbitrate ADEA claims." *See Seus v. John Nuveen & Co., Inc.*, 146 F. 3d 175, 182 (3d Cir. 1998).

To support their position, the plaintiffs rely on this Court's decision in *Hammaker v. Brown & Brown, Inc.*, 214 F. Supp. 2d 575 (E.D. Va. 2002). In *Hammaker*, the Court considered the waiver of the right to a jury trial in an age discrimination case and held that the OSPBA precluded such a waiver. *Id.* Significantly, *Hammaker* did not involve an agreement to submit a dispute to an arbitral forum. The Court restricted its analysis to the right to a jury trial

6

in a judicial forum, and expressly distinguished cases involving arbitration. *Id.* at 579. Moreover, *Hammaker* was decided before the decision in *14 Penn Plaza*, which strongly endorsed arbitration agreements in the ADEA context. To the extent *Gilmer* left any doubts about the validity of pre-dispute arbitration agreements, *14 Penn Plaza* resolved them.

The Court, therefore, holds that the arbitration agreement in this case does not violate the OWBPA.

## B. The Arbitration Agreement Meets The Fourth Circuit's Requirements for Enforcement

In addition to the preceding analysis, courts look at three factors to determine whether to enforce an arbitration agreement. *Koridze v. Fannie Mae Corp.*, 594 F. Supp. 2d 863, 867 (E.D. Va. 2009). First, a court must determine whether the parties consented to arbitration for their claim—whether there is an agreement that encompasses the current dispute. *Id.* (quoting *Green Tree Fin. Corp. – Ala. v. Randolph*, 531 U.S. 79, 90 (2000). Second, a court must decide whether Congress intended to preclude arbitration in the circumstances of the case. *Id.* (quoting *Randolph*, 531 U.S. at 90). Finally, a court must decide whether arbitration provides an effective means to vindicate a claim. *Id.* (quoting *Randolph*, 531 U.S. at 90). In this case, each of these factors weighs in favor of upholding the arbitration agreements.

First, the parties clearly consented to arbitration. The express language of the agreement contemplates that it will cover age discrimination disputes. The plaintiffs argue that the agreement is a contract of adhesion, invalidating their consent. The plaintiffs, however, had the right to work elsewhere, rather than accept Dillard's terms of employment. A contract of adhesion involves an individual with no choice in the matter. *Schwam v. XO Communs., Inc.*, No: 05-1060, 2006 U.S. App. LEXIS 7428, at *5-6 (4th Cir. 2006) ("Under Virginia law, a contract of adhesion is a standard form contract, prepared by one party and presented to a weaker

7

party—usually, a consumer—who has no bargaining power and little or no choice about the terms." (quoting *Philyaw v. Platinum Enters.*, 54 Va. Cir. 364 (2001))). Dillard's employees had the option to work elsewhere, so the arbitration agreement is not a contract of adhesion or otherwise unconscionable. *See id.* at *6; *Senture, LLC v. Dietrich*, 575 F. Supp. 2d 724, 727 n.1 (E.D. Va. 2008) ("If an employee has the freedom to consider employment elsewhere and is not bound to continue working for his current employer, an employment agreement will not be considered an adhesion contract.").

In a further attempt to show that they did not consent to arbitration, the plaintiffs argue that they did not read, or at least did not understand, the agreement. The Court finds, however, that the language of the agreement is clear enough that any layman would know that he or she could not sue Dillard's in court. At a minimum, the plaintiffs were alerted to a potential risk and could have consulted with counsel. *See Butler v. Winner Int'l Corp.*, No: 94-1792, 1995 U.S. App. LEXIS 19189, at *16 (4th Cir. July 17, 1995) ("[A] person signing a written instrument is under a duty to read it and ordinarily is charged with knowledge of its contents." (quoting *Spartan Leasing, Inc. v. Pollard*, 400 S.E.2d 476, 479 (N.C. Ct. App. 1991))); *Brown v. Green Tree Fin. Servicing Corp.*, No: 2:06-2777-PMD, 2008 U.S. Dist. LEXIS 40491, at *13 (D.S.C. May 19, 2008) ("Indeed, every contracting party owes a duty to the other party to the contract and to the public to learn the contents of a document before he signs it.").

Second, as discussed above, Congress did not intend to preclude arbitration in the circumstances in this case.

Third, arbitration provides an effective means to resolve the dispute. The plaintiffs do not contest that an arbitrator could correctly rule on an age discrimination claim. Rather, their arguments focus on the difficulty and expense of arbitration. Although the four plaintiffs say

8

they would need four separate arbitrations, nothing in the agreement precludes a single unified arbitration. Indeed, given the close factual relationship among the claims, this case appears to be a good candidate for a single arbitration. Accordingly, the time and effort needed for an arbitration is not necessarily greater than the time for a judicial proceeding.

The plaintiffs also say that their attorney's fees would be greater in arbitration. An arbitration is the equivalent of a bench trial. Anyone who has ever prepared for jury trials knows that they consume more time and effort than bench trials. Moreover, the ADEA contains a fee-shifting provision, 29 U.S.C. § 216(b). This provision ensures appropriate compensation for plaintiffs' counsel. Finally, the plaintiffs say the cost to hire an arbitrator is greater than the cost of appearing before a judge. Yet, the arbitration agreement provides that each party will pay its respective costs—the same as in this Court—plus an additional $100 or $125 filing fee that Dillard's agreed to reimburse if the arbitrator found against it. (Rules of Arbitration 2, 7-8.) More importantly, any costs unique to arbitration will be borne by Dillard's (*Id.* 1 (citing Am. Arbitration Ass'n, Employment Arbitration Rules and Mediation: Costs of Arbitration (2009).), and the arbitrator has the same authority as a judge to award reasonable attorney fees and costs to the prevailing party. (*Id.* 8.) The defendants, therefore, could not satisfy the burden of showing prohibitive costs different from litigation.

In short, arbitration is an appropriate forum in which to address the plaintiffs' claims.

### C. Dismissal Without Prejudice Is the Proper Remedy

The defendant has moved the Court either to stay proceedings during arbitration or to dismiss the case without prejudice. The authorities go both ways on this remedial issue. Some of the cases adhere to the strict terms of the Federal Arbitration Act, which provides that a court

9

must stay a case pending conclusion of the arbitration. 9 U.S.C. § 3 (2010); *Maxum Founds., Inc. v. Salus Corp.*, 779 F.2d 974, 984 (4th Cir. 1985).

When all the issues in a case are arbitrable, however, the Fourth Circuit has directed that the case be dismissed without prejudice. *Choice Hotels Int'l. v. BSR Tropicana Resort*, 252 F.3d 707, 709-10 (4th Cir. 2001) ("Notwithstanding the terms of § 3 [of the Federal Arbitration Act], however, dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable."). This Court has followed this rule, *Branchville Mach. Co., Inc. v. AGCO Corp.*, 252 F. Supp. 2d 307, 312 (E.D. Va. 2003), and will do so in this case.

### III. Conclusion

The parties are directed to submit this matter to arbitration. Since all the issues in this case are subject to arbitration, the case will be dismissed without prejudice. A separate Order will follow.

It is so ORDERED.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record.

/s/
JOHN A. GIBNEY, JR.
UNITED STATES DISTRICT JUDGE

Date: March 10, 2011
Richmond, VA